IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|                              | *    |                          |
|------------------------------|------|--------------------------|
| EDWIN F. HALE, SR. *et al.*, |      |                          |
|                              | *    |                          |
|     Plaintiffs,              |      |                          |
|                              | *    |                          |
| v.                           |      | CIVIL NO.: WDQ-06-1715   |
|                              | *    |                          |
| FREMONT INVESTMENT & LOAN,   |      |                          |
| INC.,                        | *    |                          |
|                              |      |                          |
|     Defendant.               | *    |                          |

*    *    *    *    *    *    *    *    *    *    *    *    *

MEMORANDUM OPINION

Edwin F. Hale, Sr., Canton Crossing Tower, LLC ("CCT"), and Canton Crossing Powerhouse, LLC ("CCP"), have sued Fremont Investment & Loan, Inc. ("Fremont") for breach of contract. Pending are Fremont's motions to dismiss and to deposit funds in the Court's registry.  For the following reasons, the motion to dismiss will be granted in part and denied in part, and the motion to deposit funds will be granted.


I.  Background

In September 2005, the Plaintiffs sought financing from Fremont for the construction of a multi-use office tower and a utility distribution center in the Canton neighborhood of Baltimore, Maryland.  Compl. ¶ 6.

On October 7, 2005, Hale executed two expression-of-interest letters prepared by Fremont that set forth the terms of Fremont's

proposed construction loans for the projects: the "Expression of Interest Office Tower" (the "Tower Contract") and the "Expression of Interest Utility Distribution Center" (the "UDC Contract," and with the Tower Contract, the "Contracts") *Id.* ¶ 7, Ex. 1. Pursuant to the Contracts, Hale paid Freemont $200,000 in refundable "Review and Application Fee[s]": $150,000 for the Tower Contract, and $50,000 for the UDC Contract (the "Deposits").  *Id.* ¶ 8.

The Contracts state that "[i]n the event Fremont does not issue a [loan] commitment, Borrower will be entitled to a refund of the deposit, less any costs for third-party reports, legal costs, or Fremont incurred expenses associated with the transaction." *Id.* Ex. 1 at 1, 8.

Fremont determined it would not issue a loan commitment in early January 2006, but has yet to refund any of the Deposits, despite Hale's demand.  *Id.* ¶¶ 10-11.  Upon Hale's request, Fremont provided a summary of the charges made against the Deposits that included legal costs of $104,227.12.  *Id.* ¶ 12, Ex. 2.  In reviewing legal bills Fremont later sent to substantiate those costs, Hale discovered substantial fees for drafting loan documents and other closing materials billed before Fremont made its decision not to issue a loan commitment.  *Id.* ¶ 13, Ex. 3.

The Plaintiffs claim that Fremont:

(Count 1) "breached the *terms* of the Contracts by

impermissibly charging against the Deposits costs

beyond those legitimately incurred in determining

whether Fremont would commit to the loans;" and

(Count 2) "breached the *implied covenants of good faith and*

*fair dealing* in the Contracts by charging against the

Deposits unreasonable legal costs incurred in drafting

loan documents and closing preparation, and by failing

to timely determine whether the Loans would be

extended." *Id*. ¶¶ 16, 19 (emphasis added).

Fremont has moved to dismiss, arguing that:

(1) the terms of the Contracts allow Fremont to deduct "any"

costs actually incurred that were "'associated' with

the transactions contemplated," so the charges against

the Deposits were not a breach;

(2) the implied covenant of good faith and fair dealing

cannot be used to alter the terms of a contract, so

acting according to those terms is not a breach; and

(3) CCT and CCP lack standing because they are not parties

to the Contracts.  Def.'s Mot. 1-2.

II.  Discussion

A.  Motion to Dismiss

1.  Standards of Review

a.  Motion to Dismiss for Failure to State a Claim

Under Federal Rule of Civil Procedure ("Rule") 12(b)(6), a motion to dismiss should be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002), (*citing Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)); *Mylan Laboratories, Inc. v. Raj Matkari, et al.*, 7 F.3d 1130, 1134 (4th Cir. 1993).  All allegations are treated as true, and the complaint is viewed in the light most favorable to the plaintiffs. *Mylan*, 7 F.3d at 1134.

In deciding a Rule 12(b)(6) motion, the court will consider the facts stated in the complaint and any attached documents. *Biospherics, Inc., v. Forbes, Inc.*, 989 F. Supp. 748, 749 (D. Md. 1997), *aff'd*, 151 F.3d 180 (4th Cir. 1998)).  The court may also consider documents referred to in the complaint and relied upon by the plaintiffs in bringing the action.  *Id.*

b.  Breach of Contract

"To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual

4

obligation and that the defendant breached that obligation."

*Taylor v. NationsBank, N.A.,* 365 Md. 166, 175 (2001).


2.  Analysis

a.  Breach of Express Terms

Fremont argues that the Plaintiffs' breach-of-contract claim in Count 1 has no basis because the terms of the Contracts unambiguously permit Fremont to deduct "*any* costs . . . associated with the *transaction*."  Def.'s Mem. in Supp. of Def.'s Mot. to Dismiss ("Def.'s Mem.") 4 (emphasis added).  Fremont contends that the charges with which the Plaintiffs take exception are "associated with the transaction" because "the 'transaction' encompassed the entire course of dealing between plaintiffs and Fremont from the date of the Contracts through loan closing." *Id.;* Def.'s Reply 2.

The Plaintiffs counter that "the 'transaction' referred to regarding costs is limited to the review and application process," so Fremont may only deduct the costs necessary to determine whether to extend the loan.  Pls.' Resp. 4.  Thus the issue of whether Fremont breached by deducting expenses that were not required for its loan-commitment determination turns on the meaning of "transaction" in the Contracts.

i.  Maryland Law of Contract Interpretation

In Maryland, the interpretation of a contract, including whether it is ambiguous, is a question of law for the court. *Walton v. Mariner Health of Maryland, Inc.,* 391 Md. 643, 660 (2006).  "Maryland courts follow the law of objective interpretation of contracts, giving effect to the clear terms of the contract regardless of what the parties to the contract may have believed those terms to mean." *Towson U. v. Conte* 384 Md. 68, 78 (2004).  "[T]he true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant." *Dennis v. Fire & Police Employees' Ret. Sys.*, 390 Md. 639, 656-57 (2006) (citation and internal quotation marks omitted).

"An ambiguity arises when the language of the contract is susceptible of more than one meaning to a reasonably prudent person." *Auction & Estate Representatives, Inc. v. Ashton,* 354 Md. 333, 340 (1999).  But "[a] contract is not ambiguous merely because the parties do not agree as to its meaning." *Phoenix Services Ltd. P'ship v. Johns Hopkins Hosp.,* 167 Md. App. 327, 392 (Md. Ct. Spec. App. 2006).  "If a written contract is susceptible of a clear, unambiguous and definite understanding, . . . its construction is for the court to determine." *Rothman v. Silver,* 245 Md. 292, 296 (1967).

A court must "attempt to construe [a] contract[] as a whole, to interpret [its] separate provisions harmoniously, so that, if possible, all of them may be given effect." *Walker v. Dep't of Human Resources,* 379 Md. 407, 421 (2004).  Thus a disputed term must be considered in the context of the entire agreement. *Phoenix,* 167 Md. App. at 393 (*citing Atl. Contracting & Material Co. v. Ulico Cas. Co.*, 380 Md. 285, 301 (2004)).

ii.  The "Transaction"

The Court finds that the term "transaction," properly considered in the context of the Contracts, can only mean Fremont's consideration of its commitment to the construction loans, and not "the entire course of dealing . . . from the date of the Contracts through loan closing."

The body of each of the Contracts is divided into two sections, the first dedicated to describing the "Loan Terms" in a series of subsections and the second focused on the acts of the parties pursuant to the agreement.[1]  Compl. Ex. 1.

The term "transaction" appears only once in each of the Contracts in the subsection of the Loan Terms describing the "Review and Application Fee," and is used to specify the scope of

---

[1] The relevant language in each of the Contracts is verbatim, and the structure of the Contracts indistinguishable, so the Court's analysis is the same for both.

costs Fremont is permitted to deduct from a refund of the fee, should it decide not to issue a commitment. *Id*. Ex. 1 at 1, 8. The same section also states that the "monies collected [for the Review and Application Fee] will be credited toward fees payable to Fremont at closing." *Id*.

The only other fee payable to Fremont in the Contracts is the "Loan Fee," described in the preceding subsection, which is calculated as 1.0% of the "Construction Loan Amount." *Id*. For the Tower Contract, the Loan Fee would amount to 1.0% of $68 million, or $680,000. *Id*. The Contracts indicate, then, that there are two fees associated with each loan, one to compensate Fremont for reviewing the application, and one to compensate it for the enterprise of providing the loan, with the unused portion of the former applied to the latter at closing. This arrangement throws into doubt Fremont's assertion that the Review and Application Fee may be used to cover all the costs incurred in providing the loans, as such an interpretation undermines the necessity of a second "Loan Fee."[2]

The rest of the language of the Contracts, construed as a whole agreement between the parties, indicates that the

---

[2] It is more doubtful considering that Fremont's costs in preparing the loan documents nearly exceeded the amount of the Deposits before it even decided whether to commit to the loans. If the Review and Application Fee were intended to cover all the costs through closing, it would seem an imprudent amount.

contemplated "transaction" is Fremont's consideration of the loan application.  Fremont's contemplated performance extends only to the acts necessary to consider whether to approve the loans. Fremont's expressed interest is "in considering the loan." *Id.* After the proposed Loan Terms are described in the first section of the Contracts, the final section lists the obligations of the parties under the agreement.  The payment of the Review and Application Fee is mentioned again, with reference to its description under the Loan Terms, in the paragraph listing Fremont's requirements "[i]n order for Fremont to proceed with considering offering this loan." *Id.* Ex. 1 at 4, 10.  The Contracts then state that "in accepting any fees, Fremont is not committing itself to make this loan" and Fremont "reserves the right to decline any loan based on our findings during our evaluation of the application." *Id.*  Lastly, Fremont is obligated to "complete its preliminary due diligence and submit the loan proposal to credit committee for approval." *Id.*  There is no mention of Fremont preparing the necessary documents for consummating the loans or undertaking any other acts beyond those required for loan approval.

With the only reasonable interpretation of the "transaction" being the consideration of the loan applications for approval, and not the entire course of dealing through an unrealized loan

closing, the Plaintiffs' allegation that Fremont charged costs against the Deposits unrelated to the transaction states a claim for breach of contract.

b.  Breach of Implied Covenant of Good Faith and Fair Dealing

Every contract in Maryland includes an implied covenant of good faith and fair dealing.  *Food Fair Stores, Inc. v. Blumberg,* 234 Md. 521, 534 (1964); *Port E. Transfer, Inc. v. Liberty Mut. Ins. Co.,* 330 Md. 376, 385 (1993) ("Even when the parties are silent on the issue, the law will impose an implied promise of good faith.").  But "the duty of good faith merely obligates a lender to exercise good faith in performing its contractual obligations; it does not obligate a lender to take affirmative actions that the lender is clearly not required to take under its loan documents."  *Parker v. Columbia Bank,* 91 Md. App. 346, 366 (Md. Ct. Spec. App. 1992).  Thus, this Court has held that "Maryland does not recognize a separate cause of action for the breach of implied duty of good faith and fair dealing." *Eaglehead Corp. v. Cambridge Capital Group, Inc.,* 170 F. Supp. 2d 552, 562 (D. Md. 2001).  Accordingly, the Plaintiffs' Count 2 fails to state a claim, and will be dismissed.

c.  Standing

Fremont argues that the claims of CCT and CCP must be dismissed because they are not parties to the Contracts and thus

lack standing.  The Plaintiffs counter that CCT and CCP have standing as parties to the Contracts because: (1) they are the "Borrower[s]" defined in the Tower and UDC Contracts; and (2) they are the anticipated recipients of the loans and thus have standing as third-party beneficiaries.

"[I]n order for a third party beneficiary to recover for a breach of contract it must clearly appear that the parties intended to recognize him as the primary party in interest and as privy to the promise." *Marlboro Shirt Co. v. American Dist. Tel. Co.*, 196 Md. 565, 569 (1951).

The Contracts provide that the "Borrower will be entitled" to the refund of the disputed Deposits, and the "Borrower" is defined as "A to-be-formed, single-asset entity."  Compl. Ex. 1 at 1, 8.  Thus the Contracts clearly indicate that the entities formed for the construction projects, CCT and CCP, are the only intended recipients of the Deposit refund, and Fremont's contractual duty at issue in this case is explicitly owed to them.  Accordingly, CCT and CCP have standing.


B.  Motion to Deposit Funds

     Fremont has moved the Court pursuant to Rule 67 for leave to deposit $11,100.50 in the Court's registry pending the outcome of this case, which it contends was the amount of the refund due

to Hale prior to commencing this action.  The Plaintiffs have
responded in opposition, arguing that the motion should be denied
because the deposit is unnecessary.

Rule 67 provides in part:

> In an action in which any part of the relief sought is a
> judgment for a sum of money or the disposition of a sum of
> money . . ., a party, upon notice to every other party, and
> by leave of court, may deposit with the court all or any
> part of such sum . . ., whether or not that party claims all
> or any part of the sum . . .

Fed. R. Civ. P. 67.  Although the Plaintiffs argue that they are
entitled to the $11,100.50 and more based on their claims, and
that Fremont's reasons for the motion are insufficient, the Court
finds no reason to deny the deposit pending the resolution of the
Plaintiffs' remaining claim.

III.  Conclusion

For the reasons stated above, Fremont's motion to dismiss
will be denied on Count 1, and granted on Count 2; and Fremont's
motion to deposit funds will be granted.


December 12, 2006                      _____/s/_____
Date                                  William D. Quarles, Jr.
                                      United States District Judge